UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
LIFESCI CAPITAL LLC,

                Plaintiff,

    -against-

ALCYONE THERAPEUTICS, INC., and
BIOGEN MA INC.,

                Defendants.
------------------------------------------------------------------------X

Case No.  1:25-cv-09753

**COMPLAINT**

Plaintiff LifeSci Capital LLC (LifeSci), through its attorneys, for its Complaint against defendants Alcyone Therapeutics, Inc. (Alcyone) and Biogen MA Inc. (Biogen) states:

**NATURE OF THE ACTION**

1. This is an action to recover a financial advisory fee amounting to 3.0% of the compensation paid in connection with the acquisition of Alcyone by Biogen. The fee is due pursuant to an exclusive engagement letter between LifeSci and Alcyone.

2. The obligation to pay this fee was secured by an engagement letter, which Alcyone terminated by issuing a 30-day notice on October 10, 2025, precisely in response to LifeSci's demand for its anticipated contractual fee. The merger then closed just five days after that notice became effective. This termination was thus performed in bad faith and with the admitted sole motive of evading payment of the fee, constituting a clear breach of the implied covenant of good faith and fair dealing. This calculated act was intended to exploit a technical provision of the engagement letter in order to strip LifeSci of its earned compensation, including the full $2,550,000 upfront fee and the right to future contingent payments.

3. Defendant Biogen, a sophisticated acquiring entity, knowingly coordinated and benefited from Alcyone's bad-faith termination, which reduced the total acquisition cost by

eliminating the $2,550,000 contractual fee at the expense of LifeSci, thereby constituting tortious interference with LifeSci's contract.

## THE PARTIES

4.      Plaintiff LifeSci Capital LLC is a limited liability formed under the laws of the State of New Jersey, with its principal offices located at 1700 Broadway, New York, NY 10019.

5.      Defendant Alcyone Therapeutics, Inc. is a Delaware corporation, with its principal offices located at 116 John Street, Suite 300, Lowell, MA 01852.

6.      Defendant Biogen MA Inc. is a Massachusetts corporation, with its principal offices located at 25 Binney Street, Cambridge, MA. 02142.

## JURISDICTION AND VENUE

7.      This Court has subject matter jurisdiction under 28 U.S.C. § 1332(a)(1) because the matter in controversy exceeds $75,000, exclusive of interest and costs, and is between citizens of different states (Plaintiff LifeSci is a citizen of New Jersey and Hawaii; Defendants Alcyone and Biogen are citizens of Delaware and Massachusetts, respectively).

8.      Venue is proper under 28 U.S.C. § 1391 and pursuant to Section 11 of the Engagement Letter dated March 12, 2025, in which Alcyone and LifeSci expressly agreed that any dispute arising out of or relating to the Agreement shall be instituted exclusively in a state or federal court located in New York, New York.

9.      The Court has personal jurisdiction over both Defendants pursuant to the contractual consent provision set forth in the Engagement Letter.

## FACTS

1. **The Engagement Letter and Fee Structure**

10.     On or about March 12, 2025, LifeSci and Alcyone entered into an exclusive Engagement Letter (the Agreement), appointing LifeSci as Alcyone's placement agent.

11. The Agreement's initial term was one year, running through March 12, 2026.

12. Pursuant to Section 4(c)(i) of the Agreement, Alcyone agreed to pay LifeSci a cash financial advisory fee upon the closing of an "Alternative M&A Transaction," such as a "merger, consolidation, reorganization, equity sale, asset sale or other combination." . The Agreement states that this fee shall be "equal to 3.0% (three percent) of the total market value of the cash or securities received by the Company's shareholders at the time of closing of such Alternative M&A Transaction."

13. The Agreement further provides in Section 4(a) that the Phase 1 and Phase 2 consulting fees, totaling $100,000 (the "Phase Fees"), are creditable against any Placement Agent Fee or Alternative Transaction fee payable.

14. The Agreement did not exclude Biogen or any major pharmaceutical company from the scope of transactions for which the 3.0% Alternative M&A Transaction fee was due. Any exclusion was limited only to specific "Excluded Investors" and explicitly applied only to the post-termination "Tail Period" defined in Section 3(c).

**2. The Merger and the Fraudulent Price Reduction**

15. In the summer of 2025, Alcyone entered into discussions and negotiations with Biogen concerning an acquisition.

16. On or about September 18, 2025, Alcyone and Biogen executed an $85 million "Agreement and Plan of Merger." This transaction qualified as an "Alternative M&A Transaction" under the Agreement.

17. As reported in Biogen's Form 10-Q for the quarterly period ended September 30, 2025 (filed on October 28, 2025), the initial agreed-upon terms were:

> We have agreed to pay an upfront cash payment of $85.0 million upon closing, plus additional potential amounts payable upon the achievement of certain milestones...

18. Based on the initial, publicly disclosed consideration of $85 million, LifeSci calculated its earned fee to be $2,550,000 (*i.e.*, 3.0% of $85.0 million) and submitted an invoice to Alcyone on September 24, 2025.

### 3. The Explicit Admission of Bad-Faith Termination

19. On September 25, 2025, with the merger fully negotiated, Alcyone's Chief Executive Officer, PJ Anand, outlined the company's legal strategy to evade the LifeSci fee in writing:

> our lawyers have advised me that Alcyone has several ways to avoid this payment... For example, we could terminate the Engagement Letter pursuant to Section 3(a), wait 30 days for the Tail Period to commence, and then close the deal with Biogen. Section 3(c) makes it very clear that no payment would be due to LifeSci in that scenario.

20. Alcyone thus admitted, in writing, that the sole and exclusive purpose of exercising its termination right was to exploit a technicality of the Tail Period exclusion (Section 3(c)) to avoid a clear contractual liability on a fully negotiated transaction. This strategy was not a genuine termination of the working relationship, but a calculated act of willful avoidance.

21. On October 10, 2025, immediately after LifeSci's fee demand, Alcyone formally terminated the Agreement pursuant to Section 3(a). The termination became effective thirty (30) days later, on November 9, 2025.

22. In a press release on November 14, 2025, Biogen announced that it had "completed the acquisition of Alcyone Therapeutics, a clinical-stage biotechnology company known for its innovative CNS therapy delivery solutions, such as the ThecaFlex DRx™ drug delivery system." The closing date was exactly five days after the termination became effective and the Tail Period had commenced.

23. Alcyone's termination was a willful and deliberate act of bad faith, calculated to deprive LifeSci of the fruit of its contract while ensuring Alcyone and its shareholders received the benefit of the fully negotiated and executed merger.

**4. Biogen's Knowledge and Interference**

24. Biogen had actual knowledge of the Agreement and Alcyone's contractual fee obligation to LifeSci, as this liability was a material component of the merger due diligence.

25. Biogen's legal team actively discussed and considered LifeSci's legal arguments regarding the fee before deciding it would not require LifeSci releases or waivers as a condition of closing. Biogen was explicitly aware that Alcyone had represented in its disclosure schedules that it did not have an M&A advisor representing it.

26. Biogen intentionally induced and procured Alcyone's breach of the Agreement. Biogen knew the termination was in bad faith and coordinated the closing of the merger to occur on November 14, 2025, five days after the bad-faith termination was effective, thereby eliminating LifeSci's gross $2,550,000 fee obligation and securing a direct pecuniary benefit of at least $2,450,000 for itself.

27. Biogen acted without justification. Biogen's actions were taken, in part, with the sole purpose of securing a personal pecuniary benefit—the elimination of the fee—and constituted wrongful means by coordinating Alcyone's breach of the implied covenant of good faith.

28. As a direct and proximate result of Biogen's tortious interference, LifeSci has been damaged in the net amount of $2,450,000 (representing the gross fee less the $100,000 contractual credit), plus its right to future contingent payments.

## AS AND FOR A FIRST CAUSE OF ACTION
### (Breach of Contract against Alcyone Therapeutics, Inc.)

29. Plaintiff repeats the above allegations.

30. The Agreement dated March 12, 2025, constituted a valid and binding contract between LifeSci and Alcyone.

31. LifeSci performed all of its duties and obligations under the Agreement.

32. Alcyone breached the Agreement by failing to pay the requisite 3.0% financial advisory fee upon the closing of the Alternative M&A Transaction, and by denying LifeSci its participation right in the future contingent payments.

33. As a direct and proximate result of Alcyone's breach, LifeSci has been damaged in the gross amount of $2,550,000 (3.0% of the original $85 million upfront consideration), less the $100,000 contractual credit for Phase Fees, for a net total of $2,450,000, plus its right to future contingent payments.

## AS AND FOR A SECOND CAUSE OF ACTION
### (Breach of the Implied Covenant of Good Faith and Fair Dealing against Alcyone Therapeutics, Inc.)

34. Plaintiff repeats the above allegations.

35. Under New York law, the Agreement included an implied covenant of good faith and fair dealing.

36. Alcyone breached this implied covenant by intentionally exercising its termination right on October 10, 2025, for the sole, admitted purpose of destroying or injuring LifeSci's right to receive the fruits of the contract, namely the net $2,450,000 fee and the right to contingent payments, as evidenced by the internal written statement of its CEO.

37. Alcyone's bad-faith conduct was a calculated effort to profit from the elimination of a contractual liability through improper means by exploiting a narrow technical reading of the Tail Period exclusion in Section 3(c).

38. As a direct and proximate result of Alcyone's breach of the implied covenant, LifeSci has been damaged in an amount equal to the contractual fee owed, plus interest and costs.

**AS AND FOR A THIRD CAUSE OF ACTION**
**(Tortious Interference with Contract against Biogen MA Inc.)**

39. Plaintiff repeats the above allegations.

40. A valid contract, the Agreement, existed between LifeSci and Alcyone.

41. Biogen had actual knowledge of the Agreement, including Alcyone's contractual fee obligation to LifeSci, and actively considered LifeSci's legal claims.

42. Biogen intentionally induced and procured Alcyone's breach of the Agreement by coordinating the closing of the merger on November 14, 2025, to occur after the bad-faith termination was effective, thereby securing a direct pecuniary benefit of at least $2,450,000 for itself.

43. Biogen acted without justification. Biogen's actions were taken, in part, with the sole purpose of securing a personal pecuniary benefit—the elimination of the fee—and constituted wrongful means by coordinating Alcyone's breach of the implied covenant of good faith.

44. As a direct and proximate result of Biogen's tortious interference, LifeSci has been damaged in the amount of $2,550,000, plus its right to future contingent payments.

7

## **PRAYER FOR RELIEF**

WHEREFORE, LifeSci demands judgment against Defendants Alcyone Therapeutics, Inc. and Biogen MA Inc., jointly and severally, as follows:

- Damages on the First, Second, and Third Causes of Action, in the net amount of $2,450,000, representing the unpaid upfront financial advisory fee (3.0% of $85 million less $100,000 credit).

- An order directing Biogen, as successor to Alcyone, to recognize LifeSci's contractual right of participation in future financings (Section 4(d)) and as a financial advisor on future transactions (Section 4(e)).

- An award of prejudgment interest, costs, and disbursements.

- Such other and further relief as the Court deems just and proper

Dated: New York, New York
November 24, 2025

SOLOMON, CRAMER & SUMMIT LLP
*Attorneys for LifeSci Capital LLC*

By:   /s/Andrew T. Solomon
Andrew T. Solomon
asolomon@solomoncramer.com
Clark Freeman
clark@solomoncramer.com

25 West 39th Street, 7th Floor
New York, NY 10018
(212) 884-9102